**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**MCARDLE FAMILY PARTNERSHIP,**
**a Pennsylvania Limited Partnership,**
**individually and on behalf of others**
**similarly situated,**

      **Plaintiff,**

**v.**

                                      **Civil Action No. 1:22-cv-01**

**ANTERO RESOURCES CORPORATION,**      **The Honorable Thomas S. Kleeh**
**a Delaware corporation, and**
**KEY OIL COMPANY,**
**a West Virginia corporation,**

      **Defendants.**

## AMENDED INDIVIDUAL AND CLASS ACTION COMPLAINT[1]

The McArdle Family Partnership, ("Plaintiff or McArdle Family"), by and through counsel, The Segal Law Firm, LC and Simmerman Law Office, PLLC, on behalf of themselves and the Class(es) defined below, complain as follows:

## SUMMARY OF ACTION

Plaintiff brings these individual and class action claims against Antero Resources Corporation, ("Antero"), and Key Oil Company's, ("Key"), as a result of Antero and Key's actual, knowing, and willful underpayment, nonpayment and untimely payment of oil and gas royalties, all as are more fully described below. The class allegations alleged herein are only against Antero.

---

[1] Plaintiff is filing this Amended Complaint as a matter of right pursuant to F.R.C.P. Rule 15, prior to service of a responsive pleading.

## PARTIES

1.     Plaintiff is a Pennsylvania limited partnership which owns mineral royalty interests in various mineral estates situate in Doddridge County, West Virginia.

2.     Defendant Antero is a Delaware corporation with a notice of process address of CT Corporation System, 1627 Quarrier Street, Charleston, West Virginia, 25311-2124 which, at all times relevant hereto, operated and developed certain Marcellus Shale oil and gas estates in which Plaintiff possesses an interest in Doddridge County, West Virginia.

3.     Defendant Key is a West Virginia corporation, with a notice of process address of 172 Marjorie Lane, Philippi, West Virginia, 26416 which, at all times relevant hereto, operated and developed certain shallow well oil and gas estates in which Plaintiff possesses an interest in Doddridge County, West Virginia.

4.     The acts charged in this Complaint as having been done by Antero and/or Key authorized, ordered, or done by officers, agents, affiliates, employees, or representatives, while actively engaged in the conduct or management of Antero's/Key's business or affairs, and within the scope of their employment or agency with Antero/Key.

5.     On information and belief, Antero and Key share common interests and, in some instances, common officers and stakeholders.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this class action case pursuant to 28 U.S.C. § 1332(d)(2), because the dollar amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and because this is a class action in which one or more members of the proposed Class(es) are citizens of states other than Colorado and Delaware, which are the two states of citizenship for Defendant Antero.

7.     This Court has personal jurisdiction over Antero because Antero has conducted substantial business activities in the state of West Virginia, and because the acts and conduct of Antero giving rise to the claims asserted in this class action Complaint occurred in the state of West Virginia.

8.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims alleged in this class action Complaint occurred in this judicial district.

## CLASS DEFINITION

9.     Plaintiffs bring this action on behalf of themselves and the Class(es) of similarly situated persons and entities, pursuant to Fed. R. Civ. P. 23 (b)(3)[2] consisting of:

>    Persons and entities, including their respective successors and assigns, to whom Antero has paid overriding royalties") ("ORRI Royalties") on oil and natural gas, produced by Antero from wells located in West Virginia at any time since April 15, 2012, pursuant to overriding royalty agreements (the "Royalty Agreements") which do not expressly allow deductions for costs and expenses (excluding taxes)(the "Class").

>    Permissive Subclasses pursuant to Rule 23(d):

>    Persons and entities, including their respective successors and assigns, to whom Antero has paid ORRI Royalties on oil and natural gas, produced by Antero from wells located in West Virginia at any time since April 15, 2012, pursuant to the ORRI Agreements which do not expressly allow deductions for costs and expenses (excluding taxes) and expressly state that the ORRI Royalties should be paid on a "gross income" basis (the "Gross Income Subclass").

---

[2] Plaintiff has standing under Rule 23 to represent the Class, Gross Income Subclass, and Free of Cost Subclass.

Persons and entities, including their respective successors and assigns, to whom Antero has paid ORRI Royalties on oil and natural gas, produced by Antero from wells located in West Virginia at any time since April 15, 2012, pursuant to ORRI Agreements which do not expressly allow deductions for costs and expenses (excluding taxes) and expressly state that the ORRI Royalties should be paid "free of costs" (the "Free of Cost Subclass").

Excluded in the Class, Gross Income Subclass, and Free of Cost Subclass are: (1) agencies, departments, or instrumentalities of the United States of America; (2) publicly traded oil and gas exploration companies; (3) any person who is or has been a working interest owner in a well produced by Antero in West Virginia; and (4) Antero.

## CLASS ACTION ALLEGATIONS

10.    Each of the requirements for certification of a Fed. R. Civ. P. 23(b)(3) Class is satisfied in this case.

**A.    NUMEROSITY - Federal Rule of Civil Procedure 23(a)(l)**

11.    Each of the requirements for certification of a Fed. R. Civ. P. 23(b)(3) Class is satisfied in this case.

**B.    COMMONALITY – Federal Rule of Civil Procedure 23(a)(2)**

12.    Common questions of law and fact exist as to the claims of the Plaintiff and the defined Class, Gross Income Subclass, and Free of Cost Subclass. These common legal and factual questions include, without limitation, the following:

a. Whether Antero has a duty under the various instruments and pursuant to the implied duty to market to pay overriding royalties to Plaintiff and the Class, Gross Income Subclass, and Free of Cost Subclass based upon the gross income from all oil and/or gas produced and sold by virtue of Antero's production?

b. Whether Antero has breached its obligations to the Plaintiff and the Class, Gross Income Subclass, and Free of Cost Subclass by failing to pay overriding royalties to Plaintiff and the Class based upon the gross income from all oil and/or gas produced and sold by virtue of Antero's production?

c. Whether Antero has breached its obligations to the Plaintiff and the Class, Gross Income Subclass, and Free of Cost Subclass by failing to pay overriding royalties to Plaintiff and the Class on a cost free basis?

d. Whether Antero has breached its obligations to the Plaintiff and the Class, Gross Income Subclass, and Free of Cost Subclass by improperly deducting various costs, post-production costs and expenses in its calculation and payment of overriding royalties to Plaintiff and the Class Members, thereby effectively paying the Plaintiff and the Class on a net basis instead of on a gross or cost free basis, in violation of the agreements and the implied duty to market?

e. Whether the Plaintiff and the Class, Gross Income Subclass, and Free of Cost Subclass are entitled to recover prejudgment interest on the amounts of Antero's overriding royalty underpayments from the date of each such underpayment, and the applicable rate [or rates] of prejudgment interest to be used in determining the amounts of prejudgment interest owed to the Plaintiff and the Class, Gross Income Subclass, and Free of Cost Subclass?

f. Whether the Plaintiff and the Class, Gross Income Subclass, and Free of Cost Subclass are entitled to damages and interest for Antero's untimely, incomplete and inadequate overriding royalty payments, both at common law and under the West Virginia Timely Payment Act, based upon Antero's common law and statutory duties to pay interest on untimely payments/timely pay royalties – and Antero's failure to timely pay overriding royalties and pay interest on untimely overriding royalty payments.

g. Whether Antero, actually or constructively, defrauded Plaintiff and the Class, Gross Income Subclass, and Free of Cost Subclass by paying on a net basis as opposed to a gross basis, and by failing to pay interest on untimely, incomplete and inadequate overriding royalty payments, and by failing to timely pay overriding royalty payments.

### C.    TYPICALITY – Federal Rule of Civil Procedure 23(a)(3)

13.    Plaintiff's claims are typical of the claims of the members of the Class, Gross Income Subclass, and Free of Cost Subclass.

**D.    ADEQUACY OF REPRESENTATION – Federal Rule of Civil Procedure 23(a)(4)**

14.    The Plaintiff will fairly and adequately protect the interests of the Class, Gross Income Subclass, and Free of Cost Subclass and have retained counsel who are experienced in prosecuting class action royalty underpayment lawsuits against natural gas producers.

**E.    PREDOMINANCE AND SUPERIORITY – Federal Rule of Civil Procedure 23(b)(3)**.

15.    The questions of law and fact which are common to the Class, Gross Income Subclass, and Free of Cost Subclass predominate over any individual questions which may exist.

16.    A class action is superior to other available methods for the fair and efficient adjudication of the claims of the Class, Gross Income Subclass, and Free of Cost Subclass members against Antero.

## FACTUAL BACKGROUND SUPPORTING
## THE CLAIMS OF PLAINTIFF AND THE CLASS(ES)

17.    By Assignment recorded May 9, 2008, the McArdle Family became vested with a 1/16th (6.25%) gross income overriding royalty interest in portions of what is collectively referred to as the Corlis P. Hudson lease, an approximately 491-acre mineral leasehold estate situate in the Central District of Doddridge County, West Virginia. See Original Complaint Ex. 1, May 9, 2008, Assignment of Overriding Royalty Interests, BK 222, PG 392 (Doddridge County Clerk's Office).

18.    As plainly stated within the Assignment, the personally held Hudson overriding royalty interest was previously vested personally in James I. Shearer, and thus subsequently the Estate of James I. Shearer, prior to its conveyance to the McArdle Family. Id.

19.    More specifically, the personal, gross income Hudson overriding royalty interest was created by an Assignment – Agreement dated May 1, 1978, recorded at BK 105, PG 766, in

the Doddridge County Clerk's Office. Original Complaint Ex. 2, Assignment – Agreement, BK 105, PG 766.

20.    Pursuant to the overriding royalty payment language, the gross income $1/16^{th}$ personal Hudson overriding royalty is to be paid on "one-sixteenth (1/16) of the "of the **gross income** derived from the sale of oil and gas from the aforesaid leases and/or any and all wells which may be drilled thereupon, free from costs of exploration, operation, maintenance or abandonment . . . ." Id. (emphasis added).

21.    As will be discussed further below, Plaintiff has received partial payment associated with the Hudson, $1/16^{th}$ (6.25%) gross overriding royalty interest, on a "net" basis, after Antero has taken substantial, unwarranted deductions.

22.    Additionally, near this time, the McArdle Family acquired additional overriding/profits interests which were previously held corporately, by James Drilling Corporation, prior to the conveyance of the same to the McArdle Family.

23.    More specifically, by assignment recorded May 9, 2008, the McArdle Family became vested with additional, distinct interests previously held by James Drilling Corporation in the following leasehold estates in Doddridge County, West Virginia: (1) the 491-acre Hudson lease; (2) the approximately 34-acre W.D. Towner lease situate in the Central District of Doddridge County, West Virginia; and (3) the approximately 97-acre Stone lease situate in Central District of Doddridge County, West Virginia. Original Complaint Ex. 3, May 9, 2008, Assignment of Overriding Royalty Interests, BK 222, PG 395 (Doddridge County Clerk's Office).

24.    The Hudson corporate net profits interest currently vested in the McArdle Family is to be paid as follows: "an amount equal to $[1/64^{th}]$[3] of the gross income from all oil and/or gas

---

[3] ½ of the $1/32^{nd}$ net profits interest was conveyed to a different party, William Rollins, thus the clarification. Assignment of Leases, BK 83, PG 138 (Doddridge County Clerk's Office).

which may be produced and sold by virtue of said leases, free from costs of exploration, operation, maintenance or abandonment." <u>See</u> Original Complaint Ex. 4, April 15, 1961 Assignment and Agreement, BK 83, PG 112 (Doddridge County Clerk's Office).

25.    The McArdle Family has not received any payment from Antero or Key for this interest, as will be further discussed below.

26.    The Towner overriding royalty vested in the McArdle Family is to be paid as follows: "free of cost . . . a one-thirty-second (1/32) interest in all oil or gas produced from any and all wells drilled on the aforesaid tract of real estate, which interest is called or known as an over-ride, free and clear of all drilling, equipping and operating, and to pay to, or see that said income, if any, is paid direct to said first party." <u>See</u> Original Complaint Ex. 5, June 1, 1961, Assignment and Agreement, BK 70, PG 401 (Doddridge County Clerk's Office).

27.    The McArdle Family has not received any payment from Antero or Key for this interest, as will be further discussed below.

28.    The Stone overriding royalty vested in the McArdle Family is to be paid as follows: "free of cost . . . a one-thirty-second (1/32) interest in all oil or gas produced from any and all wells drilled on the aforesaid tract of real estate, which interest is called or known as an over-ride, free and clear of all drilling, equipping and operating, and to pay to, or see that said income, if any, is paid direct to said first party." <u>See</u> Original Complaint Ex. 6, August 17, 1960, Assignment and Agreement, BK 66, PG 311 (Doddridge County Clerk's Office).

29.    The McArdle Family has not received any payment from Antero or Key for this interest, as will be further discussed below.

30.    For clarification, prior to the conveyance of these interests into the McArdle Family, the interests identified in paragraphs 23-29 herein were acquired by James Drilling

Corporation, on June 11, 1990. See Original Complaint Ex. 7, June 11, 1990, Assignment and Agreement, BK 160, PG 571 (Doddridge County Clerk's Office).

31.     On information and belief, at all relevant times the afore-noted interests have been held in force by production and/or operations at the original shallow well locations.

32.     Indeed, on information and belief, Key has drilled a number of shallow wells pursuant to the underlying leasehold interests identified above, and Antero has similarly drilled on the underlying Stone, Hudson and Towner leases, which Antero acquired portions of from Key.

33.     More specifically, for example, in the mid-late 1990s Key drilled additional wells which confirmed the underlying leases, such that the overriding royalty/net profit interests remained in force, and valid consistent with the original, underlying leasehold estates, such as: (1) API 4701704306 (Stone Lease); (2) API 4701704297 (Towner Lease).

34.     On information and belief, despite Key's activities on the site, which were recently discovered by Plaintiff, Key has failed to pay royalties on production therefrom.

35.     On information and belief, the payment of net profits, royalty and overriding royalties, as defined in assignments, was properly reserved in all legal instruments affecting mineral title, and the doctrine of merger has no application to the interests. See e.g. Original Complaint Ex. 8, Assignment Agreement into Key Oil Company dated May 30, 1996, BK 178, PG 23 (Doddridge County Clerk's Office) (stating that "assignee covenants and agrees to comply with the terms and conditions of the oil and gas leases described in Exhibit A, including but not limited to, the payment of all net profits, payments, royalty and overriding royalty as defined in the leases or any assignments thereof heretofore disclosed to Assignee.").

36.     Further, on information and belief, the severance/vesting of portions of the working interest in different oil and gas operators did not impact the validity of the McArdle interests.

37. Bringing this matter forward, on March 28, 2013, Antero Resources Corporation contacted the McArdle Family to advise that the McArdle Family "is the owner of record of an oil and gas interest" in the Stone lease. <u>See</u> Original Complaint Ex. 9, March 28, 2013, Antero Correspondence.

38. Following this contact, from approximately 2013 until March of 2020, the McArdle Family had no further contact with the Defendants.

39. Moreover, the McArdle Family was unaware that Antero and Key were actively producing McArdle Family assets.

40. This reality exists even though Antero, and for that matter Key, were producing minerals in which the McArdle Family owned a monetary interest at this time.

41. To expand, from late 2012 until September of 2020 Antero and Key were actively producing oil and gas assets in which the McArdle Family owned various interests – and no payments were made to the McArdle Family for this approximate eight (8) year production time period – as to any McArdle Family oil and gas assets.

42. For some reason, not yet known to the McArdle Family, the 1/16th personal Hudson overriding royalty was ultimately found to have been unilaterally placed in "suspense" by Antero for this approximate eight (8) year period. <u>See</u> Original Complaint Ex. 10, McArdle Letter to Antero.

43. For some reason, not yet known to the McArdle Family, no payments have been made to the McArdle Family related to, for example, production from the Stone lease – when Antero, in fact, contacted the McArdle Family in 2013 concerning its interest in this mineral asset/production.

44. On information and belief, no known justification exists for Antero's actions, or for Key's similar non-payment during this timeframe.

45. When the McArdle Family attempted to inquire into the amount of payment, the timing of payment, and the failure to pay on all assets owned by the McArdle Family in late 2020, Antero failed to respond.

46. Concerning untimely payment, current West Virginia law attempts to redress and/or prevent such abuses by requiring companies, including Antero, to pay interest, as follows: "All regular production payments from horizontal wells due and owing to an interest owner shall be tendered in a timely manner, which shall not exceed 120 days from the first date of sale of oil, natural gas, or natural gas liquids is realized and within 60 days thereafter for each additional sale, unless such failure to remit is due to lack of record title in the interest owner, a legal dispute concerning the interest, a missing or unlocatable owner of the interest, or due to conditions otherwise specified in this article." W.Va. Code § 37C-1-3, ("the Act") (further stating that "Failure to remit timely payment for horizontal wells shall result in a mandatory additional payment of an interest penalty to be set at the prime rate plus an additional two percent until such payment is made, to be compounded quarterly. The prime rate shall be the rate published on the day of the sale of oil, natural gas, and natural gas liquids in the Wall Street Journal reflecting the base rate on corporate loans posted by at least 75 percent of the nation's 30 largest banks.").

47. The Act gives the McArdles (and the Class, Gross Income Subclass, and Free of Cost Subclass) an absolute right to interest on untimely payments, unless an exception applies, as stated above.

48. Antero is well aware of its obligations to pay the required interest on untimely payments and to fully and completely make royalty payments.

49.     Nevertheless, in violation of West Virginia law, Antero ignored its obligation to pay interest on untimely payments made to Plaintiff and continues to fail to timely pay Plaintiff (and the Class, Gross Income Subclass, and Free of Cost Subclass).

50.     Indeed, on information and belief, Antero routinely delays payment of production proceeds and denies owners the interest payments to which they are entitled as part of an overarching scheme to avoid its obligations under West Virginia law.

51.     On information and belief, the oil-and-gas industry has historically been rife with abuse by lessees and operators who routinely delay and/or suspend payments to owners to, among other things, obtain interest free loans/off balance sheet financing at the expense of owners. Because of the lessee's or operator's control over the relationship/accounting information, they are able to easily and successfully employ such schemes.

52.     Ultimately, related to the $1/16^{th}$ (6.25%) **gross income** overriding royalty interest in portions of what is collectively referred to as the Corlis P. Hudson lease, the approximately 491-acre mineral leasehold estate situate in the Central District of Doddridge County, West Virginia, Antero did issue partial payment to the McArdle Family.

53.     However, Antero's partial payment is riddled with deductions for, among others: (1) compression; (2) fuel; (3) gathering; (4) processing; (5) transportation, and (6) other charges. See Original Complaint Ex. 11, Antero Resources Royalty Payment Stub (evidencing deductions).

54.     Stated succinctly, the McArdle Family's royalties paid by Antero to date are grossly deficient, as the McArdle Family's oil and gas royalties are not being calculated based upon "the gross income derived from the sale of oil and gas from the aforesaid leases and/or any and all wells which may be drilled thereupon, free from costs of exploration, operation, maintenance or abandonment . . . ." See Original Complaint Ex. 2.

55.     Rather, the McArdle Family (and the Class, Gross Income Subclass, and Free of Cost Subclass) royalties are being calculated at a rate unilaterally defined by Antero – contrary to the governing payment, "gross income" and "free of costs" language plainly set forth in the chain of title.

56.     Further, Antero and Key still have not made payment related to the additional Hudson net profits interest, the Stone overriding royalty, and the Towner overriding royalty – despite having an obligation to do so.

57.     Such obligation being, for example, acknowledged by Antero in 2013 correspondence related to the Stone overriding royalty asset. See Original Complaint Ex. 9, March 28, 2013, Antero Correspondence.

58.     Given Antero's historic, eight (8) year failure to pay without justification, the McArdle Family possesses a belief that payment as to these additional assets may, again, be "suspended" – without justification or right.

59.     On information and belief, prior to initiating litigation, the McArdle Family tried to directly address these issues with Antero/obtain information from Antero, with Antero ultimately simply ignoring the McArdle Family's attempts to resolve these issues short of litigation. See Original Complaint Ex. 12, McArdle Family Emails – July of 2021.

60.     The Royalty Agreement language described in the Class, Gross Income Subclass, and Free of Cost Subclass definition provides that Antero is to pay royalties on gross production, not on a net, unilateral basis defined by Antero.

61.     There is no language in the Royalty Agreement described in the Class definition which provides that Antero, in its calculation and payment of overrising royalties to the Class

members, is permitted to deduct any of its costs/expenses in its calculation of royalties to be paid to the Class members.

62.     By the underpayment of the overriding royalties owed to Plaintiff (and the Class) in the manner described above, Antero has breached its contractual obligations to Plaintiffs and the Class under the Royalty Agreements.

63.     As a result of Antero's breaches of its royalty payment obligations under the Royalty agreements, Plaintiff and the Class have sustained substantial damages.

### *PLAINTIFF'S INDIVIDUAL CLAIMS FOR RELIEF*

### COUNT I – BREACH OF CONTRACT/IMPLIED DUTY TO MARKET[4]
### DEFENDANT ANTERO – IMPROPER DEDUCTIONS
### (HUDSON MINERAL ACREAGE – 1/16th OVERRIDING ROYALTY)

64.     Plaintiff incorporates by reference all paragraphs of its Complaint as if stated fully herein.

65.     Defendant Antero is contractually obligated to pay the McArdle Family a 1/16th overriding royalty on "the gross income derived from the sale of oil and gas from the aforesaid leases and/or any and all wells which may be drilled thereupon, free from costs of exploration, operation, maintenance or abandonment . . . ." related to certain portions of the Hudson mineral acreage. See Original Complaint Ex. 2.

66.     The Defendant has failed, and refuses, to pay to the McArdle Family oil and gas royalties consistent with the governing language.

67.     Defendant Antero's conduct in taking unlawful and unauthorized deductions willfully breaches the terms and conditions of the governing language contained in the chain of mineral title/agreements and the implied duty to market.

---

[4] Plaintiff is aware that if a class is certified this Count will effectively be included within the Class Certification Order.

68.     The Defendant's material breaches have proximately and directly damaged the McArdle Family and continue to damage the McArdle Family as Antero continues to take unlawful and unauthorized deductions from each royalty payment.

69.     Upon information and belief, the Defendant's breaches were concealed from the McArdle Family in an attempt to deprive Plaintiff the benefits of its asset – for an eight (8) year period.

70.     Upon information and belief, the McArdle Family was, and is continuing, to be damaged by the Defendant's failure to pay the contractually owing overriding royalties and is further damaged by the Defendant's failure to pay interest on the eight (8) years of production, and via the Defendant's substantial, unauthorized and unlawful deductions, which to date well exceed $500,000.00.

## COUNT II – BREACH OF CONTRACT
## DEFENDANTS ANTERO/KEY – FAILURE TO PAY
## (TOWNER, STONE AND HUDSON MINERAL ACREAGE)

71.     Plaintiff incorporates by reference all paragraphs of its Complaint as if stated fully herein.

72.     Defendants Antero and Key are contractually obligated to pay the McArdle Family overriding royalties from production on and under the Towner and Stone leasehold estates, as follows: "free of cost . . . a one-thirty-second (1/32) interest in all oil or gas produced from any and all wells drilled on the aforesaid tract of real estate, which interest is called or known as an over-ride, free and clear of all drilling, equipping and operating, and to pay to, or see that said income, if any, is paid direct to said first party." See e.g. Original Complaint Ex. 6, August 17, 1960 Assignment and Agreement, BK 66, PG 311 (Doddridge County Clerk's Office).

73.     Similarly, Defendants Antero and Key are obligated to pay the McArdle Family a 1/64th net profits interest from production on and under the Hudson leasehold acreage, as follows: "an amount equal to [1/64th]5 of the gross income from all oil and/or gas which may be produced and sold by virtue of said leases, free from costs of exploration, operation, maintenance or abandonment." See Original Complaint Ex. 4, April 15, 1961, Assignment and Agreement, BK 83, PG 111 (Doddridge County Clerk's Office).

74.     The Defendants have failed to pay the McArdle Family consistent with the foregoing language, despite these assets being in active production by the Defendants.

75.     The Defendants conduct in failing to pay the McArdle Family consistent with the foregoing language willfully breaches the terms and conditions of the governing language contained in the chain of mineral title/agreements.

76.     The Defendants' material breaches have proximately and directly damaged the McArdle Family.

77.     Upon information and belief, the Defendants' breaches were concealed from the McArdle Family to deprive the McArdle Family of its assets.

78.     Upon information and belief, the McArdle Family was, and is continuing, to be damaged by the Defendant's failure to pay the contractually owing overriding royalties/net profits.

### COUNT III – BREACH OF STATUTORY OBLIGATION TO PAY INTEREST DEFENDANT ANTERO[6]

79.     Plaintiff incorporates by reference all paragraphs of its Complaint as if stated fully herein.

---

[5] ½ of the 1/32nd net profits interest was conveyed to a different party, William Rollins, thus the clarification. See Assignment of Leases, BK 83, PG 138 (Doddridge County Clerk's Office).

[6] Plaintiff is similarly aware that if a class is certified a portion of this Count will effectively be included within the Class Certification Order.

80.     Plaintiff was legally entitled to the payment of proceeds from Antero for wells owned and/or operated by Antero in West Virginia.

81.     The Act requires Antero to hold proceeds from the sale of oil and/or gas production for the benefit of the owners legally entitled thereto.

82.     The Act requires payment of proceeds to be made in a timely manner according to the applicable time periods set forth in the Act.

83.     If the holder of any proceeds subject to the Act fails, to make timely payments, without justification, to persons entitled to receive such proceeds/royalties, the holder must pay interest when the payment is eventually made.

84.     Antero held, and continues to hold, oil and gas proceeds/royalties belonging to Plaintiff and Antero failed, and continues to fail, to timely pay oil and gas royalties/proceeds to Plaintiff.

85.     Antero's failure to pay interest was knowing and intentional – and was for a grossly unreasonable timeframe.

86.     Antero's failure(s) to pay interest has caused Plaintiff economic harm.

87.     Further, Plaintiff is entitled to other damages provided by West Virginia statute, including compounding interest.

### COUNT IV – ACCOUNTING AND DISGORGEMENT
### DEFENDANTS ANTERO/KEY

88.     Plaintiff incorporates by reference all paragraphs of its Complaint as if stated fully herein.

89.     Plaintiff requests the Court enter an order directing Antero and Key to provide an accounting to Plaintiff which discloses: (a) the amount of accrued interest that Plaintiff should

have been paid by Antero, (b) the amount of royalties which are due and owing to Plaintiff for the last ten (10) year period; and (c) the method for calculating such amounts.

90.    Antero's/Key's payment of monetary damages does not provide an adequate legal remedy for the wrongs committed by Antero/Key because it will not deprive Antero/Key of the ill-gotten gains they have obtained through their unlawful behavior.

91.    The principles of equity and good conscience do not permit the Defendants to retain the benefits derived from its improper and unlawful use of interests/monies belonging to the McArdle Family.

92.    Therefore, Plaintiff requests the Court enter an order directing Antero/Key to disgorge themselves of any benefits derived from its improper and unlawful use of Plaintiff's royalty funds.

## COUNT V – CONSTRUCTIVE FRAUD
## DEFENDANT ANTERO

93.    Plaintiff incorporates by reference all paragraphs of its Complaint as if stated fully herein.

94.    As an oil and gas operator, contracting party, and/or active business entity Antero possessed a legal or equitable duty to refrain from taking actions that tend to deceive others or that violate public, private or business confidences, and to follow statutory directives and mandates directed to protect West Virginia property owners, such as Plaintiff.

95.    Antero breached its statutory and common law duties by, among others, engaging in the course of conduct as outlined in this Complaint, including, but not limited to, Antero's failure to timely and fully pay owing royalties consistent with West Virginia's timely payment statutory provisions for an eight (8) year window, without justification.

96. Antero's actions and omissions were committed to enrich Antero with knowledge that Antero actions/omissions would cause adverse business consequences to the McArdle Family, and that Antero would benefit from its actions/omissions.

97. As an aggrieved party, the McArdle Family has standing to seek the redress of these unlawful actions committed by Antero, and to pursue damages from Antero.

98. The McArdle Family has been damaged by Antero's constructive fraud.

### *CLASS CLAIMS FOR RELIEF*

**COUNT VI – BREACH OF CONTRACT/IMPLIED DUTY TO MARKET
DEFENDANT ANTERO – IMPROPER DEDUCTIONS AND OVERRIDING ROYALTY
PAYMENTS**

99. Plaintiff incorporates by reference all paragraphs of its Complaint as if stated fully herein.

100. At all times relevant hereto Plaintiff and the Class, Gross Income Subclass, and Free of Cost Subclass were royalty payees under valid and enforceable Royalty Agreement under which Antero has been obligated to pay overriding royalties, at various times after April 15, 2012.

101. At all times relevant hereto, Plaintiff and the Class, Gross Income Subclass, and Free of Cost Subclass have fully performed their contractual obligations under the terms of the Royalty Agreements with Antero.

102. Antero has breached its contractual obligations to Plaintiffs and the Class, Gross Income Subclass, and Free of Cost Subclass under the Royalty Agreements, in the manner described above and by violating the implied duty to market.

103. Plaintiffs and the Class, Gross Income Subclass, and Free of Cost Subclass have sustained substantial damages as a direct result of Antero's breaches of its contractual and common law obligations to Plaintiffs and the Class under the Royalty Agreements.

## COUNT VII – CONSTRUCTIVE FRAUD
## DEFENDANT ANTERO

104.    Plaintiff incorporates by reference all paragraphs of its Complaint as if stated fully herein.

105.    As an oil and gas operator, contracting party, and/or active business entity Antero possessed a legal or equitable duty to refrain from taking actions that tend to deceive others or that violate public, private or business confidences, and to follow statutory directives and mandates directed to protect West Virginia property owners, such as Plaintiff and the Class, Gross Income Subclass, and Free of Cost Subclass.

106.    Antero breached its statutory and common law duties by, among others, engaging in the course of conduct as outlined in this Complaint, including, but not limited to, Antero's failure to timely and fully pay owing royalties consistent with West Virginia's timely payment statutory provisions, without justification.

107.    Antero's actions and omissions were committed to enrich Antero with knowledge that Antero actions/omissions would cause adverse business consequences to Plaintiff and the Class, Gross Income Subclass, and Free of Cost Subclass, and that Antero would benefit from its actions/omissions.

108.    As an aggrieved party, Plaintiff has standing to seek the redress of these unlawful actions committed by Antero, and to pursue damages from Antero for Plaintiff's benefit and that of the Class, Gross Income Subclass, and Free of Cost Subclass.

109.    Plaintiff and the Class, Gross Income Subclass, and Free of Cost Subclass have sustained substantial damages as a direct result of Antero's breaches of its contractual obligations to Plaintiffs and the Class under the Royalty Agreements.

## COUNT VIII – BREACH OF STATUTORY OBLIGATION TO PAY INTEREST
## DEFENDANT ANTERO

110.    Plaintiff incorporates by reference all paragraphs of its Complaint as if stated fully herein.

111.    Plaintiff and the Class, Gross Income Subclass, and Free of Cost Subclass are legally entitled to the payment of proceeds from Antero for wells owned and/or operated by Antero in West Virginia.

112.    The Act requires Antero to hold proceeds from the sale of oil and/or gas production for the benefit of the owners legally entitled thereto.

113.    The Act requires payment of proceeds to be made in a timely manner according to the applicable time periods set forth in the Act.

114.    If the holder of any proceeds subject to the Act fails, to make timely payments, without justification, to persons entitled to receive such proceeds/royalties, the holder must pay interest when the payment is eventually made.

115.    Antero held, and continues to hold, oil and gas proceeds/royalties belonging to Plaintiff and the Class, Gross Income Subclass, and Free of Cost Subclass and Antero failed, and continues to fail, to timely pay oil and gas royalties/proceeds to Plaintiff and the Class, Gross Income Subclass, and Free of Cost Subclass.

116.    Antero's failure to pay interest was knowing and intentional – and was for a grossly unreasonable timeframe.

117.    Antero's failure(s) to pay interest has caused Plaintiff and the Class, Gross Income Subclass, and Free of Cost Subclass economic harm.

118.    Further, Plaintiff and the Class, Gross Income Subclass, and Free of Cost Subclass are entitled to other damages provided by West Virginia statute, including compounding interest.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

1.      An order certifying this case as a Fed. R. Civ. P. 23(b)(3) class action, appointing Plaintiff as the Class Representative for the Class, Gross Income Subclass, and Free of Cost Subclass;

2.      Judgment in favor of the Plaintiff and the Class, Gross Income Subclass, and Free of Cost Subclass against Antero for the damages sustained as a result of Antero's breaches of the Royalty Agreements;

3.      For compensatory damages, economic damages, restitution and all other legal, statutory and equitable relief;

4.      For statutory, pre-judgment and post-judgment interest;

5.      For an accounting, as requested herein;

6.       For punitive and exemplary damages, consistent with Plaintiff's constructive fraud claim;

7.      For reasonable attorneys' fees and litigation expenses;

8.      For appropriate injunctive relief; and

9.      For such further relief as this Court may deem just and proper.

**PLAINTIFF DEMANDS A JURY TRIAL FOR ITSELF
AND THOSE SIMILARLY SITUATED.**

DATED:  April 19, 2022.                    Respectfully submitted,

                                           SIMMERMAN LAW OFFICE, PLLC

                                           By:*/s/ Frank E. Simmerman, III*
                                               Frank E. Simmerman, Jr.
                                               (W. Va. Bar #3403)
                                               Chad L. Taylor
                                               (W. Va. Bar #10564)
                                               Frank E. Simmerman, III
                                               (W. Va. Bar #11589)

                                               254 East Main Street
                                               Clarksburg, WV  26301
                                               Phone: (304) 623-4900


                                           Scott S. Segal (WV Bar I.D. #4717)
                                           C. Edward Amos, II (WV Bar I.D. #12362)
                                           Jason P. Foster (WV Bar I.D. #10593)
                                           **THE SEGAL LAW FIRM**
                                           **A Legal Corporation**
                                           810 Kanawha Boulevard, East
                                           Charleston, West Virginia 25301
                                           Telephone: (304) 344-9100
                                           Facsimile: (304) 344-9105
                                           scott.segal@segal-law.com
                                           edward.amos@segal-law.com
                                           jason.foster@segal-law.com
                                           (Notices of Appearance to be timely filed)

                                           *Counsel for Plaintiff McArdle Family Partnership*
                                           *and Proposed Lead Class Counsel*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**MCARDLE FAMILY PARTNERSHIP,**
**a Pennsylvania Limited Partnership,**
**individually and on behalf of others**
**similarly situated,**

       **Plaintiff,**

**v.**

                                 **Civil Action No. 1:22-cv-01**

**ANTERO RESOURCES CORPORATION,**       **The Honorable Thomas S. Kleeh**
**a Delaware corporation, and**
**KEY OIL COMPANY,**
**a West Virginia corporation,**

       **Defendants.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 19th day of April, 2022, I electronically filed the foregoing "**AMENDED INDIVIDUAL AND CLASS ACTION COMPLAINT**" with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the following:

Amy M. Smith (W.Va. Bar #6454)
amy.smith@steptoe-johnson.com
Lauren K. Turner (W.Va. Bar #11942)
lauren.turner@steptoe-johnson.com
Ryan T. Loos (W.Va. Bar #13648)
ryan.loos@steptoe-johnson.com
STEPTOE & JOHNSON PLLC
400 White Oaks Boulevard
Bridgeport, WV  26330

                                     */s/ Frank E. Simmerman, III*
                                      *Counsel for the Plaintiff*