```
             IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**MCARDLE FAMILY PARTNERSHIP,**

      **Plaintiff,**

   v.                                                     **CIVIL NO. 1:22-CV-1**
                                                                           **(KLEEH)**

**ANTERO RESOURCES CORPORATION and**
**KEY OIL COMPANY,**

      **Defendants.**

**MEMORANDUM OPINION AND ORDER DENYING**
**MOTION TO BIFURCATE AND STAY [ECF NO. 7] AND**
**REFERRING MOTIONS TO COMPEL [ECF NO. 46, 54, 66, 71]**

Pending before the Court is a motion to bifurcate and stay this action. For the reasons discussed herein, the Court **DENIES** the motion.

### I.   BACKGROUND/PROCEDURAL HISTORY

This case was originally filed in the Circuit Court of Doddridge County, West Virginia. It was removed to this Court on January 3, 2022. Defendant Antero Resources Corporation filed a motion to bifurcate and stay, which has been fully briefed. The Court held a hearing on the motion on August 17, 2022. An Amended Complaint was filed on April 19, 2022.

### II.   ALLEGATIONS IN THE AMENDED COMPLAINT

This case involves allegations of underpayment, nonpayment, and untimely payment of oil and gas royalties by Defendants Antero Resources Corporation ("Antero") and Key Oil Company ("Key Oil")

**MEMORANDUM OPINION AND ORDER DENYING**
**MOTION TO BIFURCATE AND STAY [ECF NO. 7] AND**
**REFERRING MOTIONS TO COMPEL [ECF NO. 46, 54, 66, 71]**

(together, "Defendants"). The Plaintiff, the Mcardle Family Partnership ("Plaintiff"), brings individual and class action claims. The class allegations are only against Antero.

Plaintiff defines the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure as follows:

<u>The "Class"</u>

> Persons and entities, including their respective successors and assigns, to whom Antero has paid overriding royalties ("ORRI Royalties") on oil and natural gas, produced by Antero from wells located in West Virginia at any time since April 15, 2012, pursuant to overriding royalty agreements (the "Royalty Agreements") which do not expressly allow deductions for costs and expenses (excluding taxes).

Plaintiff defines the permissive subclasses pursuant to Rule 23(d):

<u>The "Gross Income Subclass"</u>

> Persons and entities, including their respective successors and assigns, to whom Antero has paid ORRI Royalties on oil and natural gas, produced by Antero from wells located in West Virginia at any time since April 15, 2012, pursuant to the ORRI Agreements which do not expressly allow deductions for costs and expenses (excluding taxes) and expressly state that the ORRI Royalties should be paid on a "gross income" basis.

<u>The "Free of Cost Subclass"</u>

> Persons and entities, including their

Case 1:22-cv-00001-TSK-MJA   Document 73   Filed 09/30/22   Page 3 of 15 PageID #: 1226

MCARDLE V. ANTERO ET AL.                                      1:22-CV-1

**MEMORANDUM OPINION AND ORDER DENYING
MOTION TO BIFURCATE AND STAY [ECF NO. 7] AND
REFERRING MOTIONS TO COMPEL [ECF NO. 46, 54, 66, 71]**

> respective successors and assigns, to whom Antero has paid ORRI Royalties on oil and natural gas, produced by Antero from wells located in West Virginia at any time since April 15, 2012, pursuant to ORRI Agreements which do not expressly allow deductions for costs and expenses (excluding taxes) and expressly state that the ORRI Royalties should be paid "free of costs."[1]

By Assignment recorded on May 9, 2008, Plaintiff asserts that it became vested with a 1/16 (6.25%) gross income overriding royalty interest in portions of what is collectively referred to as the Corlis P. Hudson lease. Am. Compl., ECF No. 22, ¶ 17. This area is an approximately 491-acre mineral leasehold estate in Doddridge County, West Virginia. Id. The overriding royalty interest was created by an Assignment – Agreement dated May 1, 1978. Id. ¶ 19.

Pursuant to the overriding royalty payment language, the royalty is to be paid on 1/16 of the "gross income derived from the sale of oil and gas from the aforesaid leases and/or any and all wells which may be drilled thereupon, free from costs of exploration, operation, maintenance or abandonment . . . ." Id. ¶ 20. Plaintiff asserts that it has received only partial payment

---

[1] Plaintiff writes, "Excluded in the Class, Gross Income Subclass, and Free of Cost Subclass are: (1) agencies, departments, or instrumentalities of the United States of America; (2) publicly traded oil and gas exploration companies; (3) any person who is or has been a working interest owner in a well produced by Antero in West Virginia; and (4) Antero."

Case 1:22-cv-00001-TSK-MJA   Document 73   Filed 09/30/22   Page 4 of 15 PageID #: 1227

**MCARDLE V. ANTERO ET AL.**                                            **1:22-CV-1**

**MEMORANDUM OPINION AND ORDER DENYING
MOTION TO BIFURCATE AND STAY [ECF NO. 7] AND
REFERRING MOTIONS TO COMPEL [ECF NO. 46, 54, 66, 71]**

associated with the Hudson gross overriding royalty interest because its payments have been on a "net" basis, after Antero took substantial and unwarranted deductions. Id. ¶ 21.

Around the same time, Plaintiff acquired additional overriding/profits interests that were previously held by James Drilling Corporation. Id. ¶ 22. By Assignment recorded May 9, 2008, Plaintiff became vested with additional, distinct interests previously held by James Drilling Corporation in the following leasehold estates: (1) the 491-acre Hudson lease; (2) the approximately 34-acre W.D. Towner lease situation in the Central District of Doddridge County; and (3) the approximately 97-acre Stone lease situate in the Central District of Doddridge County. Id. ¶ 23.

Pursuant to Hudson corporate net profits interest, Plaintiff is to be paid 1/64 "of the gross income from all oil and/or gas which may be produced and sold by virtue of said leases, free from costs of exploration, operation, maintenance or abandonment." Id. ¶ 24. Plaintiff asserts that it has not received any payment from Antero or Key Oil for this interest. Id. ¶ 25.

Pursuant to the Towner overriding royalty, Plaintiff is to be paid "free of cost . . . a one-thirty-second (1/32) interest in all oil or gas produced from any and all wells drilled on the

Case 1:22-cv-00001-TSK-MJA   Document 73   Filed 09/30/22   Page 5 of 15 PageID #: 1228

MCARDLE V. ANTERO ET AL.                                          1:22-CV-1

**MEMORANDUM OPINION AND ORDER DENYING
MOTION TO BIFURCATE AND STAY [ECF NO. 7] AND
REFERRING MOTIONS TO COMPEL [ECF NO. 46, 54, 66, 71]**

aforesaid tract of real estate, which interest is called or known as an over-ride, free and clear of all drilling, equipping and operating, and to pay to, or see that said income, if any, is paid direct to said first party." Id. ¶ 26.  Plaintiff asserts that she has not received any payment from Antero or Key Oil for this interest. Id. ¶ 27.

Pursuant to the Stone overriding royalty, Plaintiff is to be paid "free of cost . . . a one-thirty-second (1/32) interest in all oil or gas produced from any and all wells drilled on the aforesaid tract of real estate, which interest is called or known as an over-ride, free and clear of all drilling, equipping and operating, and to pay to, or see that said income, if any, is paid direct to said first party." Id. ¶ 28.  Plaintiff asserts that it has not received any payment from Antero or Key Oil for this interest. Id. ¶ 29.

On March 28, 2013, Antero contacted Plaintiff to advise that Plaintiff "is the owner of record of an oil and gas interest" in the Stone lease. Id. ¶ 37.  From 2013 until March 2020, however, Plaintiff had no contact with Antero or Key Oil. Id. ¶ 38. Moreover, Plaintiff was unaware that Antero and Key Oil were actively producing its assets. Id. ¶ 39.  From late 2012 to September 2020, Defendants were actively producing oil and gas

**MEMORANDUM OPINION AND ORDER DENYING
MOTION TO BIFURCATE AND STAY [ECF NO. 7] AND
REFERRING MOTIONS TO COMPEL [ECF NO. 46, 54, 66, 71]**

assets in which Plaintiff owned various interests, and no payments were made to Plaintiff for this approximately eight years of production. Id. ¶ 41.

Plaintiff alleges that for a reason unknown to it, the 1/16 personal Hudson overriding royalty was ultimately found to have been unilaterally placed in "suspense" by Antero for this approximately eight-year period. Id. ¶ 42. In late 2020, when Plaintiff attempted to inquire into the amount, failure to make, and timing of payment, Antero failed to respond. Id. ¶ 45. Plaintiff believes that the payment of the additional assets may be "suspended" now without justification or right. Id. ¶ 58.

Antero ignored Plaintiff's attempt to address these issues prior to litigation. Id. ¶ 59. Plaintiff asserts that the Royalty Agreement language described in the definitions of the Class, Gross Income Subclass, and Free of Cost Subclass provides that Antero is to pay royalties on gross production, not on a net, unilateral basis defined by Antero. Id. ¶ 60. Further, Plaintiff asserts, there is no language in the Royalty Agreement described in the Class definition that provides that Antero is permitted to deduct any of its costs/expenses in its calculation of royalties to be paid to the Class members. Id. ¶ 61. By the underpayment of the overriding royalties owed to Plaintiff and the Class, Antero has

**MEMORANDUM OPINION AND ORDER DENYING
MOTION TO BIFURCATE AND STAY [ECF NO. 7] AND
REFERRING MOTIONS TO COMPEL [ECF NO. 46, 54, 66, 71]**

breached its obligations to Plaintiff and the Class. Id. ¶ 62. As a result, Plaintiff and the Class have sustained substantial damages. Id. ¶ 63.

### III. CAUSES OF ACTION

Based on these facts, Plaintiff asserts the following:

Individual Claims

- Count One: Breach of Contract/Implied Duty to Market (against Antero – Improper Deductions) (Hudson Mineral Acreage – 1/16 Overriding Royalty);

- Count Two: Breach of Contract (against Antero and Key Oil - Failure to Pay) (Towner, Stone and Hudson Mineral Acreage);

- Count Three: Breach of Statutory Obligation to Pay Interest (against Antero);

- Count Four: Accounting and Disgorgement (against Antero and Key Oil);

- Count Five: Constructive Fraud (against Antero);

Class Claims

- Count Six: Breach of Contract/Implied Duty to Market (against Antero – Improper Deductions and Overriding Royalty Payments);

- Count Seven: Constructive Fraud (against Antero); and

- Count Eight: Breach of Statutory Obligation to Pay Interest (against Antero).

Case 1:22-cv-00001-TSK-MJA   Document 73   Filed 09/30/22   Page 8 of 15   PageID #: 1231

**MCARDLE V. ANTERO ET AL.**                                        **1:22-CV-1**

**MEMORANDUM OPINION AND ORDER DENYING
MOTION TO BIFURCATE AND STAY [ECF NO. 7] AND
REFERRING MOTIONS TO COMPEL [ECF NO. 46, 54, 66, 71]**

## IV.   MOTION TO BIFURCATE AND STAY

Defendants ask the Court to bifurcate Count II and stay the remainder of the action pending the following:

- The resolution of Count II;

- The certified questions in SWN Production Company, LLC v. Kellam, No. 21-0729, 2022 WL 2128335 (W. Va. June 14, 2022); and

- The appeal in Corder v. Antero Resources Corp., No. 21-1715 (4th Cir.).

Since the motion was filed, the Supreme Court has issued a decision in Kellam. Therefore the only bases for Defendants' requested stay are the resolution of Count II and the Corder appeal.

Defendants contest the overriding royalty interests at issue in Count II. The outcome of the title issues, they argue, may make the resolution of Counts III, IV, and V unnecessary. Further, they argue, Counts I and V raise issues that may be impacted by Corder and may make resolution of Counts II, IV, and V unnecessary in certain aspects. Defendants assert that they will be unduly prejudiced absent a stay and that Plaintiffs will not be harmed by a stay.

## V.   RESPONSE

In response, Plaintiff argues that this is a delay tactic by

Case 1:22-cv-00001-TSK-MJA Document 73 Filed 09/30/22 Page 9 of 15 PageID #: 1232

MCARDLE V. ANTERO ET AL. 1:22-CV-1

**MEMORANDUM OPINION AND ORDER DENYING
MOTION TO BIFURCATE AND STAY [ECF NO. 7] AND
REFERRING MOTIONS TO COMPEL [ECF NO. 46, 54, 66, 71]**

Defendants and that the royalty provisions in this matter are fundamentally different than the issues presented in Corder.

In Corder, Plaintiff argues, the primary issues relate to the application of Wellman and Tawney to market value royalty clauses/market enhancement royalty clauses – not to royalty/payment provisions which expressly provide for payment on "gross income" or "free of costs," as is the case in this litigation. As Plaintiff writes, the issues in Corder, in Antero's own words in its appellate brief, are:

1. Whether the Wellman presumption requiring extra clarity for deducting postproduction costs applies to the market value royalty clauses at issue, or whether such clauses are properly analyzed instead under the work-back method endorsed in Leggett and Imperial Colliery Co. v. Oxy USA Inc., 912 F.2d 696 (4th Cir. 1990).

2. Whether the post-production costs at issue may be deducted under the Market Enhancement Clause.

3. When it applies, whether the rebuttable presumption in Wellman and Tawney requires extra clarity for deducting post-production costs all the way to the actual point of sale or only those costs necessary to reach the first market.

See Response, Exh. 6, at 4. The royalty provisions in Corder fall into three categories: "market value" clauses, market enhancement clauses, and "proceeds" clauses.

Case 1:22-cv-00001-TSK-MJA Document 73 Filed 09/30/22 Page 10 of 15 PageID #: 1233

MCARDLE V. ANTERO ET AL.                                          1:22-CV-1

**MEMORANDUM OPINION AND ORDER DENYING
MOTION TO BIFURCATE AND STAY [ECF NO. 7] AND
REFERRING MOTIONS TO COMPEL [ECF NO. 46, 54, 66, 71]**

Plaintiff argues that any effect of Corder on this case is purely speculative and therefore a stay is not warranted. Plaintiff also argues it would be prejudiced by bifurcation and a stay. For eight years, not known at the time to Plaintiff, Antero enjoyed the benefits of Plaintiff's oil and gas royalties, making partial payments and no payments at all. Further, it would force Plaintiff to factually develop the same case twice. Plaintiff argues that a stay is not warranted because Plaintiff's claims are interrelated. Finally, Plaintiff argues, while constructive fraud is pled in this case, Corder involves actual fraud.

## VI. LAW AND DISCUSSION

"For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). Bifurcation is in the discretion of the court. See Scarberry v. Huffman, No. 3:10-0831, 2010 WL 4068923, at *1 (S.D.W. Va. Oct. 15, 2010). "The party requesting separate trials bears the burden of convincing the court that such an exercise of its discretion will (1) promote greater convenience to the parties, witnesses, jurors, and the court, (2) be conducive to expedition and economy, and (3) not result in undue prejudice to any party." McKiver v. Murphy-Brown, LLC, 980 F.3d

Case 1:22-cv-00001-TSK-MJA Document 73 Filed 09/30/22 Page 11 of 15 PageID #: 1234

**MCARDLE V. ANTERO ET AL.** 1:22-CV-1

**MEMORANDUM OPINION AND ORDER DENYING
MOTION TO BIFURCATE AND STAY [ECF NO. 7] AND
REFERRING MOTIONS TO COMPEL [ECF NO. 46, 54, 66, 71]**

937, 975 (4th Cir. 2020). "While separation of issues for trial is not to be routinely ordered, it is important that it be encouraged where experience has demonstrated its worth." See Advisory Committee Note, Rule 42(b), 1966 Amendment.

Similarly, a stay is an "exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." Nken v. Holder, 556 U.S. 418, 433 (2009) (internal citations and quotations omitted). In determining whether to enter a stay, the Court considers the following: "(1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party." Romeo v. Antero Res. Corp., No. 1:17cv88, 2021 WL 2933176, at *3 (N.D.W. Va. July 12, 2021) (Keeley, J.) (citations omitted). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." Landis v. N. Am. Co., 299 U.S. 248, 254–55 (1936) (citations omitted).

In Corder, this Court held that the leases at issue were governed by and failed to satisfy Wellman v. Energy Resources, 557

**MEMORANDUM OPINION AND ORDER DENYING
MOTION TO BIFURCATE AND STAY [ECF NO. 7] AND
REFERRING MOTIONS TO COMPEL [ECF NO. 46, 54, 66, 71]**

S.E.2d 254 (W. Va. 2001), and Tawney v. Columbia Natural Resources, 633 S.E.2d 22 (W. Va. 2006). See Corder v. Antero Res. Corp., No. 1:18cv30, 2021 WL 1912383, at *9-10 (N.D.W. Va. May 12, 2021) (Keeley, J.). Corder involved breach of contract claims regarding the alleged underpayment of royalties on several leases with market enhancement, market value, proceeds, and flat rate royalty provisions. The case was timely appealed, and the issues were fully briefed at the Fourth Circuit in November 2021.

In Romeo, this Court granted a stay of a royalty class action pending a decision in the Corder appeal, finding that the interests of judicial economy weighed heavily in favor of a stay. See Romeo, 2021 WL 2933176, at *4. The Court reasoned that if the Fourth Circuit reverses or vacates Corder, the Court would need to reconsider the applicability of Wellman and Tawney to the leases at issue in Romeo. Id. The Court recognized that few of the class members' leases in Romeo contained the lease modification at issue in Corder but determined that because Corder also involves the royalty provisions in their unmodified form, each of the leases in Romeo might be impacted by the Fourth Circuit's decision in the Corder appeal. Id.

Here, the Court finds that Defendants have not met their burden to show that a bifurcation of Count II will promote greater

**MEMORANDUM OPINION AND ORDER DENYING
MOTION TO BIFURCATE AND STAY [ECF NO. 7] AND
REFERRING MOTIONS TO COMPEL [ECF NO. 46, 54, 66, 71]**

convenience to the parties, witnesses, jurors, and the court; be conducive to expedition and economy; and not result in undue prejudice to any party. As Plaintiff points out, Defendants are asserting a defense to a breach of contract claim by challenging the interest at issue in Count II. While the resolution Count II might resolve other counts, Defendants are also free to file a summary judgment motion on other counts at the appropriate time. Considering Plaintiff's allegation that it has gone without payments for eight years, it could result in undue prejudice if Count II is bifurcated.

In addition, Plaintiff has not met its burden to show that a stay is warranted. While it is possible that judicial economy could be served by staying this case pending the outcome of Corder, the Court is not convinced that the lease provisions at issue in the cases are the same. The lease issues here involve payments being made on a "net" basis instead of a "gross" basis. In Corder, on the other hand, the issues surround "market value" clauses, market enhancement clauses, and "proceeds" clauses. The leases here are even less likely than in Romeo to be affected by Corder. Thus, Defendants have failed to show that the interests of judicial economy are served by a stay or that they would suffer hardship if the action is not stayed. As for the potential prejudice to the

Case 1:22-cv-00001-TSK-MJA Document 73 Filed 09/30/22 Page 14 of 15 PageID #: 1237

MCARDLE V. ANTERO ET AL. 1:22-CV-1

**MEMORANDUM OPINION AND ORDER DENYING
MOTION TO BIFURCATE AND STAY [ECF NO. 7] AND
REFERRING MOTIONS TO COMPEL [ECF NO. 46, 54, 66, 71]**

nonmoving party, as discussed above, because Plaintiff alleges that it has gone without full payments for eight years, Plaintiff would suffer prejudice if the Court stayed the action pending the Corder appeal.

### VII. MOTIONS TO COMPEL

Pending before the Court are four discovery motions [ECF Nos. 46, 54, 66, 71], some or all of which will be affected by this Memorandum Opinion and Order and the forthcoming Scheduling Order. Pursuant to 28 U.S.C. § 636, the motions are **REFERRED** to United States Magistrate Judge Michael J. Aloi for disposition. In ruling on the motion, the Magistrate Judge is authorized to consider the record, conduct a hearing if necessary, and do all things proper to render a decision.

### VIII. CONCLUSION

For the reasons discussed above, the Court **DENIES** the motion to bifurcate and stay [ECF No. 7] and **REFERS** discovery motions to the Magistrate Judge [ECF Nos. 46, 54, 66, 71]. The Court will separately issue a Scheduling Order.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel of record and the Honorable Michael J. Aloi, United States Magistrate Judge.

Case 1:22-cv-00001-TSK-MJA   Document 73   Filed 09/30/22   Page 15 of 15   PageID #: 1238

**MCARDLE V. ANTERO ET AL.**                                      **1:22-CV-1**

**MEMORANDUM OPINION AND ORDER DENYING
MOTION TO BIFURCATE AND STAY [ECF NO. 7] AND
REFERRING MOTIONS TO COMPEL [ECF NO. 46, 54, 66, 71]**

DATED: September 30, 2022

*Tom S Kleeh*
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA