**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**MCARDLE FAMILY PARTNERSHIP,**

       **Plaintiff,**

    **v.**                             **CIVIL NO. 1:22-CV-01**
                                               **(KLEEH)**

**ANTERO RESOURCES CORPORATION,
KEY OIL COMPANY, and
FRANKLIN L. BUTLER,**

       **Defendants.**

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT [ECF NO. 100] AND DENYING
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT [ECF NO. 110]**

Pending before the Court is Defendants' motion to dismiss or, in the alternative, motion for summary judgment with respect to Count Two.  Also pending is Plaintiff's cross-motion for summary judgment.  For the reasons discussed herein, Defendants' motion is **GRANTED**, and Plaintiff's motion is **DENIED**.

## I.    ALLEGATIONS IN THE COMPLAINT

The Plaintiff, the Mcardle Family Partnership ("Plaintiff"), alleges that it owns mineral royalty interests in various mineral estates situate in Doddridge County, West Virginia.  Second Am. Compl., ECF No. 95, at ¶ 1.  Defendant Antero Resources Corporation ("Antero") operated and developed certain Marcellus Shale oil and gas estates in which Plaintiff allegedly possesses an interest. Id. ¶ 2.  Defendant Key Oil Company ("Key Oil") operated and

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 100] AND DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT [ECF NO. 110]**

developed certain shallow well oil and gas estates in which Plaintiff allegedly possesses an interest.  Id. ¶ 3.  Defendant Franklin L. Butler ("Butler") "is a party to this litigation in his capacity as a purported indispensable party solely within the context of Count [Two]."  Id. ¶ 4.  Plaintiff alleges that Antero and Key Oil are liable for underpayment, nonpayment, and untimely payment of oil and gas royalties.  Plaintiff also brings class action claims against Antero only.

Plaintiff asserts that by assignment recorded May 9, 2008, Plaintiff became vested with a 1/16 gross income overriding royalty interest in portions of what is collectively referred to as the Hudson lease, an approximately 491-acre mineral leasehold estate situate in the Central District of Doddridge County.  Id. ¶ 18. Plaintiff alleges that it has received partial payment associated with this interest, but only on a "net" basis, after Antero took substantial, unwarranted deductions.  Id. ¶ 22.

Plaintiff alleges that it also acquired additional interests which were previously held corporately by James Drilling Corporation.  Id. ¶ 23.  Specifically, by assignment recorded May 9, 2008, Plaintiff asserts that it became vested with interests in the following leasehold estates: (1) the approximately 491-acre Hudson lease, (2) the approximately 34-acre Towner lease situate

2

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT [ECF NO. 100] AND DENYING
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT [ECF NO. 110]**

in the Central District of Doddridge County, and (3) the approximately 97-acre Stone lease situate in the Central District of Doddridge County. Id. ¶ 24.

Key Oil has drilled numerous shallow wells pursuant to the underlying leasehold interests identified, and Antero has similarly drilled on the underlying Stone, Hudson, and Towner leases, portions of which Antero acquired from Key Oil. Id. ¶ 33. Despite Key Oil's activities on the site, Key Oil has not paid Plaintiff royalties on production therefrom. Id. ¶ 35. Plaintiff alleges that it has not been paid any royalties on the Hudson corporate net profits interest, the Towner lease, or the Stone lease. Id. ¶¶ 26, 28, 30, 57.

Plaintiff brings the following causes of action:

### Individuals Claims for Relief

- (Count One) Breach of Contract/Implied Duty to Market (against Antero – improper deductions) (Hudson Mineral Acreage – 1/16 overriding royalty);

- (Count Two) Breach of Contract (against Antero, Key Oil, Butler – failure to pay) (Towner, Stone, and Hudson Mineral Acreage);

- (Count Three) Breach of Statutory Obligation to Pay Interest (against Antero);

- (Count Four) Constructive Fraud (against Antero);

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT [ECF NO. 100] AND DENYING
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT [ECF NO. 110]

## Class Claims for Relief

- (Count Five) Breach of Contract/Implied Duty to Market (against Antero – improper deductions and overriding royalty payments);

- (Count Six) Constructive Fraud (against Antero); and

- (Count Seven) Breach of Statutory Obligation to Pay Interest (against Antero).

## II.  STANDARDS OF REVIEW

When a motion is styled as a motion to dismiss or, alternatively, a motion for summary judgment, "[t]he district court has discretion to determine whether to treat [it] . . . as a 12(b)(6) motion or to convert it to a summary judgment motion." Miller v. Md. Dep't of Nat. Res., 813 F. App'x 869, 873 (4th Cir. 2020) (unpublished).  The Fourth Circuit has articulated two requirements for converting a motion to dismiss into a motion for summary judgment.  The first is that all parties "be given some indication by the court . . . that it is treating the 12(b)(6) motion as a motion for summary judgment." Id. (citing Gay v. Wall, 761 F.2d 175, 177 (4th Cir. 1984).  "This notice exists when 'a party is aware that material outside the pleadings is before the court,' such as when a motion is captioned in the alternative." Id.  The second requirement is that the parties have been "afforded a reasonable opportunity for discovery."  Id. (citing Gay, 761

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT [ECF NO. 100] AND DENYING
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT [ECF NO. 110]**

F.2d at 177).   "To oppose a motion for summary judgment on this basis, a plaintiff must submit a Rule 56(d) affidavit showing that he cannot present facts essential to justify the opposition without discovery because those facts are unavailable to him."   Id.

### Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move for dismissal upon the ground that a complaint does not "state a claim upon which relief can be granted."   In ruling on a 12(b)(6) motion to dismiss, a court "must accept as true all of the factual allegations contained in the complaint." Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)).   A court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

A court should dismiss a complaint if it does not contain "enough facts to state a claim to relief that is plausible on its face."   Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).   A motion to dismiss "does not resolve contests surrounding the facts, the merits of a claim, or

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT [ECF NO. 100] AND DENYING
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT [ECF NO. 110]**

the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 942, 952 (4th Cir. 1992). Dismissal is appropriate only if "it appears to be a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proven in support of its claim." Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir. 1969).

**Rule 56**

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT [ECF NO. 100] AND DENYING
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT [ECF NO. 110]

### III. <u>DISCUSSION</u>

In Count Two, Plaintiff brings a breach of contract claim against Antero, Key Oil, and Butler, stating that Antero and Key Oil breached their obligations with respect to the Towner and Stone overriding royalty interests and the Hudson corporate net profits interest. Defendants argue that the Court should dismiss Count Two for failure to state a claim because the record title is clear that Plaintiff does not own the interests. In the alternative, Defendants ask the Court to grant summary judgment in their favor with respect to Count Two. In response, Plaintiff maintains that it owns the interests and asks the Court to affirm this via cross-motion for summary judgment.

Both parties are on notice that the Court might treat Defendants' motion as one for summary judgment. Defendants' motion is styled as one that is, in the alternative, for summary judgment, and Plaintiff filed a cross-motion for summary judgment. The motions are fully briefed. No party has indicated that discovery is necessary. For these reasons, the Court **CONSTRUES** Defendants' motion as one for summary judgment and is tasked with deciding cross-motions for summary judgment on the title issue in Count Two.

MCARDLE V. ANTERO                                            1:22-CV-01

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT [ECF NO. 100] AND DENYING
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT [ECF NO. 110]**

Plaintiff asserts that the overriding royalty interests in the Towner and Stone leases and the corporate net profits interest in the Hudson lease were assigned to it from James Drilling Corporation, recorded on May 9, 2008. Defendants argue, however, that the same interests had previously been conveyed to Key Oil from James I. Shearer, Beatrice E. Shearer, and James Drilling Corporation on May 30, 1996 (the "1996 assignment"). Defendants assert, therefore, that James Drilling Corporation no longer possessed interests that could be conveyed to Plaintiff in 2008.

For the reasons discussed below, the Court agrees with Defendants' position. Plaintiff does not dispute that the overriding royalty interests and the corporate net profits interest were owned by James Drilling Corporation leading up to the 1996 assignment. See Second Am. Compl., ECF No. 95, at ¶ 31. It is also undisputed that James Drilling Corporation owned portions, if not the entirety, of the working interests in the Towner, Stone, and Hudson leases leading up to the 1996 assignment. As discussed below, the 1996 assignment was a broad conveyance without exception or reservation. Any overriding royalty interests and corporate net profits interest possessed by James Drilling Corporation, if they still existed, passed to Key Oil at

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT [ECF NO. 100] AND DENYING
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT [ECF NO. 110]**

that time.  The doctrine of merger is not necessary to reach this conclusion, but it provides clarity as to how the interests passed.

**A.    The 1996 assignment to Key Oil was a clear, broad conveyance that included no exceptions or reservations.**

Most pertinently, the 1996 assignment states as follows:

> That for and in consideration of the sum of One Dollar ($1.00) cash in hand paid, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, James I. Shearer and Beatrice E. Shearer, his wife, and James Drilling Corporation, a corporation, AKA, James I. Shearer Drilling Co., do hereby grant, sell, assign, transfer and convey to Key Oil Company **all of their right, title and interest in and to those certain oil and gas leases, the oil and gas leasehold estates created thereby and the oil or gas wells situated thereon** being situate in Central and Greenbrier Districts, Doddridge County, West Virginia and Union District, Ritchie County, West Virginia, and being more particularly described by the oil and gas lease information and the oil and gas well API numbers set forth in Exhibit "A" which is attached hereto and considered a part hereof, except as hereinafter provided, . . . .

Exh. 1, Memo. in Support, ECF No. 101-1. (emphasis added).  It also sets forth certain terms and conditions:

> 1.    Assignee shall, upon execution of this agreement, make the necessary applications for transfer of said oil and/or gas wells to its name with the appropriate governmental agencies of the State of West Virginia, which transfer shall include

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT [ECF NO. 100] AND DENYING
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT [ECF NO. 110]**

Assignee's compliance with all well bonding and plugging requirements imposed upon oil and gas well operators by the State of West Virginia.

2.   Assignee covenants and agrees to comply with the terms and conditions of the Oil and Gas Leases described in Exhibit "A", including but [sic] limited to, the payment of all net profits, payments, royalty and overriding royalty as defined in the leases or any assignments thereof heretofore disclosed to Assignee.

3.   It is understood and agreed between the parties hereto, that this Assignment Agreement is made without any warranty of title whatsoever, either express or implied, and that the Assignee accepts said oil and gas leasehold estate and the oil and/or gas wells located thereon in their present "AS IS – WHERE IS" condition.  The Assignor covenants and agrees, however, to assume all liability and responsibility for payment to third parties for work performed and/or to be performed and materials provided on said leasehold estates and wells prior to the execution of this agreement.  In this regard, Assignors shall upon execution of this agreement, provide Assignee with evidence of payment in full to all third party contractors and materialmen who have either worked on or provided materials for the leasehold estates and wells.

4.   It is further understood and agreed between the parties hereto that all crude oil, which has been produced from the leasehold estate and is stored in tanks at the various well locations on the date of the execution of this agreement, shall become the property of the Assignee subject to the payment of all royalty, net profit and overriding royalty interests.

MCARDLE V. ANTERO                                              1:22-CV-01

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT [ECF NO. 100] AND DENYING
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT [ECF NO. 110]**

---

5.    It is further understood and agreed that Assignee shall indemnify Assignors and save them harmless from any claims which might arise from any source, whatsoever, as a result of Assignees use and operation of said oil and gas leasehold estates and the wells located thereon for which Assignee agrees to promptly "bond" so that same can be removed from Assignors "bond".

6.    Assignors do hereby expressly covenant that, during the past five (5) years, they have neither assigned or conveyed away any interest in the property conveyed hereby nor have they caused any debt or encumbrance to be incurred thereon.

7.    Assignors covenant and agree to provide Assignee with any additional documentation which may, at a later date, be found necessary to accomplish the purposes of this agreement.

For the consideration aforesaid the Assignors do further grant, convey, set over, sell and assign to Assignee, all personal property and real property rights or interests, including but not limited to, pipelines, tanks, meters, pump jacks, motors, separators, rights of way and easements owned by Assignors and used in conjunction with the operation, production and maintenance of the oil and gas leasehold estate and wells assigned and conveyed hereby.

Id.

Defendants argue that the granting language is broad, conveying all interests at issue and neither reserving nor excepting anything.  Plaintiff argues that the conveyance was only a limited grant of shallow wells that had no impact on the

11

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 100] AND DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT [ECF NO. 110]**

overriding royalty interests and the corporate net profits interest. It asserts that Defendants' position goes against recent precedent in this district. In Mountaineer Minerals, the parties disputed whether the assignment at issue assigned both the shallow rights and deep rights, and whether it pertained only to the wells or included all leasehold rights. Mountaineer Minerals, LLC v. Antero Res. Corp., No. 1:16CV28, 2019 WL 5727589, at *1 (N.D.W. Va. Nov. 5, 2019). The court ultimately found that the assignment was a limited conveyance relating only to two wells. Id. at *3. Plaintiff argues that the same interpretation guides here, and the 1996 assignment was similarly limited in nature.

In Mountaineer Minerals, the relevant assignment included the following language:

> [T]he first part does hereby grant, convey, transfer, assign, sell and set over unto the said party of the second part, all of its right, title and interest **in and to the following oil and/or gas wells** and any and all leasehold rights associated therewith:
>
> 1. **That certain oil and/or gas well**, known as the Hughes Group #1 Well, bearing API Well No. 47-85-03583, **and that certain oil and/or gas well** known as the B & W Producers #1, API 47-85 02520, both being situate upon that certain tract or parcel of land, containing 578 acres, in Clay District, Ritchie County, West Virginia, and drilled under a lease from William J. Collins and Sarah Collins, his wife, to B. D. Willis, and dates June 11, 1919,

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT [ECF NO. 100] AND DENYING
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT [ECF NO. 110]**

> of record in Oil and Gas Lease Book 42, page
> 5.

Id. at *4.  Similarly, Plaintiff compares the assignment here to the assignment in Faith United, which was referenced in the Mountaineer Minerals briefing.  In Faith United, the Supreme Court of Appeals found that a deed conveying an interest "in the surface only" of a tract of land did not convey an interest in the oil and gas beneath it.  Faith United Methodist Church and Cemetery of Terra Alta v. Morgan, 745 S.E.2d 461, 464 (W. Va. 2013).  The granting clause in Faith United stated as follows:

> the said party of the first part [Florence]
> does grant unto the said party of the second
> part [Walter], the following described
> property, that is to say: Her one-seventh
> undivided interest **in the surface only** with
> the hereditaments and appurtenances thereto
> belonging, (the coal and mining privileges
> having been previously sold) in the two
> hundred and twenty-five acre tract of land[.]

Id. (emphasis added).

The Court agrees with Defendants that the difference among the assignments is clear.  The granting language at issue in Mountaineer Minerals and Faith United was clearly limiting in nature.  In Mountaineer Minerals, the assignment specifically mentioned "oil and/or gas wells," and in Faith United, it specifically mentioned "the surface only."  In the assignment here,

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 100] AND DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT [ECF NO. 110]

however, the language is broad, conveying "all of their right, title and interest in and to those certain oil and gas leases, the oil and gas leasehold estates created thereby and the oil or gas wells situated thereon." The Court further disagrees with Plaintiff's position that the terms and conditions make the 1996 assignment a limited grant. They are not, by their plain text, limiting in nature.

While the granting clause in the 1996 assignment states that it applies "except as hereinafter provided," no exceptions or reservations are included in the assignment. "In order to create an exception or reservation in a deed which would reduce a grant in a conveyance clause which is clear, correct and conventional, such exception or reservation must be expressed in certain and definite language." Syl. Pt. 2, <u>DWG Oil & Gas Acquisitions, LLC v. Southern Country Farms, Inc.</u>, 796 S.E.2d 201 (W. Va. 2017) (citing Syl. Pt. 2, <u>Hall v. Hartley</u>, 119 S.E.2d 750 (W. Va. 1961)). Plaintiff argues that the second term and condition — that the assignee agrees to comply with the payment of all net profits, payments, royalty and overriding royalty — is evidence that James Drilling Corporation did not convey its overriding royalty interests and net profits interest. The Court disagrees.

14

MCARDLE V. ANTERO                                          1:22-CV-01

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT [ECF NO. 100] AND DENYING
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT [ECF NO. 110]**

First, the language does not expressly state that any such interest is reserved or excepted.  Second, other parties had reserved overriding royalty interests in the leases.  <u>See</u> Memo. in Support, ECF No. 101, at p. 8–14.  For example, it appears that William Rollins still possessed a 1/64 overriding royalty interest in the Towner lease at the time of the 1996 assignment.  <u>See id.</u> at p. 9; <u>see</u> <u>also</u> <u>id.</u> at Exhs. 7 and 9, ECF Nos. 101-7 and 101-9. Key Oil, by assuming the Towner lease, would have become obligated to pay Rollins pursuant to that overriding royalty interest.  Upon review, the Court does not believe that the other terms and conditions constitute express exceptions or reservations.

By the clear language of the broad conveyance, and even without applying the doctrine of merger, James Drilling Corporation did not reserve any overriding royalty interests or corporate net profits interest when it conveyed "all" of the "right, title and interest in and to those certain oil and gas leases, the oil and gas leasehold estates created thereby and the oil or gas wells situated thereon" to Key Oil in 1996. Accordingly, James Drilling Corporation possessed no overriding royalty interests or corporate net profits interest that could have been conveyed to Plaintiff in 2008.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 100] AND DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT [ECF NO. 110]**

**B.    The doctrine of merger provides clarity as to how the interests passed to Key Oil.**

"In oil and gas law, 'merger' is the 'extinguishment of a lesser estate by merger into a greater estate when the greater and the lesser estate coincide and meet in one and the same person without any intermediate estate.'"  Sunwest Operating Co., LLC v. Classic Oil & Gas, Inc., 143 F. App'x 614, 619 (5th Cir. 2005) (citing Williams & Meyers, 8 M Manual of Oil & Gas Terms 116).  The Supreme Court of Appeals of West Virginia has recently explained how the doctrine of merger applies, albeit not in the context of overriding royalties:

> "When the owner of a separate interest in the oil and gas under a tract of land acquires title to the surface of the land, that separate mineral interest is extinguished by the merger doctrine." Similarly, syllabus point 2 of Henline v. Miller, 117 W. Va. 439, 185 S.E. 852 (1936), holds: "*When the owner of a dominant estate acquires the fee simple title to the servient estate, an easement appurtenant to the dominant estate is extinguished*." Accord, Folio v. City of Clarksburg, 221 W. Va. 397, 401, 655 S.E.2d 143, 147 (2007) (referring to syllabus point 2 of Henline as the "doctrine of merger"). See, Hunter v. Rosebud County, 240 Mont. 194, 783 P.2d 927, 929 (1989) (*When the owner of the previously excepted mineral estate conveyed that estate to the owner of the subservient remaining estate, the remaining estate was merged into the mineral estate.*).

DWG, 796 S.E.2d at 207 (footnote omitted).

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT [ECF NO. 100] AND DENYING
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT [ECF NO. 110]**

An overriding royalty interest in an oil and gas lease is "[a] share of either production or revenue from production (free of the costs of production) carved out of a lessee's [working] interest under and oil-and-gas lease." Decker v. Statoil USA Onshore Props., Inc., 5:15-CV-114, 2017 WL 2471052, at *1 n.2 (N.D.W. Va. June 7, 2017) (citing "Royalty, Overriding Royalty," Black's Law Dictionary (10th ed. 2014)). Thus, an overriding royalty interest is a subservient estate to the working interest because it is carved out of it, and it would merge with the working interest when they are owned by the same person or entity.

The corporate net profits interest at issue here, by definition in its originating instrument, operates the same way as an overriding royalty interest:

> It is the intention of this assignment to convey unto the assignee herein a net profits interest entitling assignee to an amount equal to one-thirty-second (1/32) of the gross income from all oil and/or gas which may be produced and sold by virtue of said leases, free from costs of exploration, operation, maintenance or abandonment.

Exh. 19, Memo. in Support, at ECF No. 101-19. In fact, the 2008 assignment referred to it as an overriding royalty interest. See Exh. 1, Original Compl., at ECF No. 1-1. Moreover, as the Fourth Circuit has explained,

17

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT [ECF NO. 100] AND DENYING
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT [ECF NO. 110]**

> A net profits interest is a share of gross
> production measured by net profits from
> operation of the property. Like the
> overriding royalty it is created from the
> working interest, and the net profits interest
> differs from other production-measured
> payments in that it represents a fractional
> share of the profit of the operating company,
> rather than a fractional share of the minerals
> themselves as produced.

Cox v. United States, 497 F.2d 348, 351 n.3 (4th Cir. 1974). Thus,
the Court sees no reason to find that the net profits interest
would not merge with the working interest in the same way that an
overriding royalty interest would.

As of May 30, 1996, James Drilling Corporation owned the
overriding royalty interests in the Towner and Stone leases and
the corporate net profits interest in the Hudson lease at the same
time that it owned part, if not all, of the working interests in
the Towner, Stone, and Hudson leases. Accordingly, James Drilling
Corporation's overriding royalty interests and corporate net
profits interest merged with its working interests, all of which
passed to Key Oil in 1996. Because the interests were merged,
even if the grant in the 1996 assignment was not broad and without
exceptions (as the Court has already found above), the interests
could not have been reserved.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 100] AND DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT [ECF NO. 110]**

    **C.   Because Plaintiff does not own the interests forming the basis of Count Two, its breach of contract claim must fail.**

Under West Virginia law, to assert a breach of contract claim, the plaintiff must plead "(1) the existence of a valid, enforceable contract; (2) that plaintiff has performed its own contractual duties; (3) that defendant has breached or violated its duties under the contract; and (4) that plaintiff has been injured as a result of defendant's violation of contractual duty." <u>Rodgers v. Sw. Energy Co.</u>, No. 5:16-CV-54, 2016 WL 3248437, at *2 (N.D.W. Va. June 13, 2016) (citation omitted).  As discussed above, Plaintiff does not have an interest in the leasehold estates that form the basis of Count Two.  Accordingly, there exists no valid, enforceable contract with respect to Count Two.  Without the existence of a contract, Plaintiff's claim in Count Two fails.  Accordingly, Defendants' motion for summary judgment is **GRANTED**, Plaintiff's motion is **DENIED**, and Count Two is **DISMISSED WITH PREJUDICE**.

## IV.  <u>CONCLUSION</u>

For the reasons discussed above, the Court **ORDERS** as follows:

- Defendants' motion for summary judgment is **GRANTED** [ECF No. 100];

- Plaintiff's motion for summary judgment is **DENIED** [ECF No. 110]; and

MCARDLE V. ANTERO                                                    1:22-CV-01

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT [ECF NO. 100] AND DENYING
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT [ECF NO. 110]**

- Count Two is **DISMISSED WITH PREJUDICE.**

It is so **ORDERED.**

The Clerk is **DIRECTED** to transmit copies of this Memorandum Opinion and Order to counsel of record.

DATED: March 29, 2024

*Tom S Kleeh*

THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA